Keith Scully
NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
(206) 274-2800

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Gaston Cornu-Labat,<br>Plaintiff;<br><br>v.<br><br>Mehdi Merred, an individual, and Eric Bakke and Thomas Clark, individually and in their official capacities as police officers, and the City of Quincy, Washington, a Washington Municipal Corporation and political subdivision of the State of Washington. | NO. CV-11-080-EFS<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

1.    Plaintiff Gaston Cornu-Labat, by and through his attorneys, Keith Scully and Newman & Newman LLP, brings this action seeking redress for damages and injunctive relief requiring expungement of arrest records caused by false reporting of a violation of a protection order and an ensuing arrest, detention, and prosecution without probable cause carried out by officers of the Quincy Police Department.

### II.    PARTIES

2.    Plaintiff Gaston Cornu-Labat is a resident of Grant County, Washington.  Plaintiff is a physician and well-known public figure in Quincy, Washington.

1      3.    Defendant Mehdi Merred is an individual and resident of Grant

2  County, Washington.  Defendant Merred is the administrator of the Quincy Valley

3  Medical Center.

4      4.    The Quincy Police Department is a municipal law enforcement

5  agency in Quincy, Washington.  The City of Quincy is a political subdivision of

6  Washington and a Washington municipal corporation.

7      5.    Defendants Eric Bakke and Thomas Clark are officers with the

8  Quincy Police Department.

9  ### III.   VENUE AND JURISDICTION

10      6.    This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), 42

11  U.S.C. §§ 1983, 1985, 1986, and 1988.

12      7.    Venue is proper in this Court under 28 U.S.C. § 1391(b).

13      8.    One or more of the individual defendants reside in Grant County,

14  Washington.  The City of Quincy is located in Grant County, Washington.  All of

15  the acts and failures to act of the defendants occurred within Grant County,

16  Washington.

17      9.    Venue is proper in this action because the cause of action arose within

18  the court's jurisdiction and because one or more defendants reside in the court's

19  jurisdiction. This court has jurisdiction over the subject matter of this complaint

20  and over the defendants herein.

21  ### IV.   ALLEGATIONS OF FACT

22      10.    The Quincy Police Department provides police services for the City of

23  Quincy, Washington.  Quincy Police Officers are commissioned law enforcement

24  officers, and are empowered to make arrests based on probable cause.

25      11.    The Quincy Police Department is charged with training and

26  supervising its police officers, and in providing information through police

27  dispatch to enable Quincy police officers to lawfully conduct their duties.

28      12.    Dr. Gaston Cornu-Labat was terminated from employment with the

COMPLAINT - 2

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  Quincy Valley Medical Center (QVMC) in 2009 after he criticized management

2  and operating practices.  Dr. Cornu-Labat asserts that his termination was

3  unlawful, and has petitioned the CEO and Board of Directors for Quincy Valley

4  Medical Center for redress, and for changes in medical center operating

5  procedures. Dr. Cornu-Labat's petitions have included letters and personal delivery

6  of documents critical of QVMC practices to the administrative offices of QVMC.

7  Dr. Cornu-Labat had no contact with the Merred family, other than Mehdi Merred,

8  as part of his petitions to QVMC.

9        13.    On November 3, 2010, CEO Mehdi Merred and Director Randy

10  Zolman, through counsel, each obtained a temporary order of protection from the

11  Grant County District Court (the "Orders of Protection").  The Orders of Protection

12  prohibited Dr. Cornu-Labat from contacting or surveiling Mehdi Merred, Zolman,

13  or named Merred family members, including Alexa Merred.  The Orders of

14  Protection also prohibited Dr. Cornu-Labat from entering or being within 250 feet

15  of either the workplace or the residence of Merred or Zolman. The Orders of

16  Protection did not prohibit Dr. Cornu-Labat from being in the same location as the

17  Merreds or Zolman. A true and correct copy of the Orders of Protection is attached

18  as Exhibit A. The Quincy Police Department received a copy of the Orders of

19  Protection and the Orders of Protection were available to officers.

20        14.    On November 24, 2010, the Grant County District Court extended the

21  Orders of Protection until December 8, 2010, pending a decision on a permanent

22  order of protection (the "Reissuance Order"; collectively with the Orders of

23  Protection "Court's Orders".).  A true and correct copy of the Reissuance Order is

24  attached as Exhibit B. The Quincy Police Department received a copy of the

25  Reissuance Order and the Reissuance Order was available to officers.

26        15.    Dr. Cornu-Labat's son attends Quincy High School, and plays

27  basketball on the varsity basketball team.  Alexa Merred is also a student at Quincy

28  High School.

COMPLAINT - 3

**NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

16.     On December 4, 2010, Dr. Cornu-Labat's son played basketball during a scheduled inter-school basketball game in the Quincy High School gymnasium.  Dr. Cornu-Labat attended the event along with other persons. A large crowd of spectators were in the gymnasium.

17.     Alexa Merred also attended the event.  Midway through the game, Mehdi Merred spoke with Alexa Merred via telephone and asked if Dr. Cornu-Labat was at the game.  Alexa Merred stated that he was, and Mehdi Merred asked to speak with Quincy High school staff members.

18.     Defendant Merred falsely told school staff members that a restraining order prevented Dr. Cornu-Labat from being within 250 feet of Alexa Merred, and asked school staff to tell Dr. Cornu-Labat to leave.

19.     After Defendant Merred's call, while the game was still in progress, Dr. Cornu-Labat was contacted by Quincy High School staff, who told him that Mehdi Merred had called and informed Quincy High School staff that Alexa Merred was at the game and claimed that the Court's Orders prohibited Dr. Cornu-Labat from being within 250 feet of Alexa Merred. Dr.  Cornu-Labat did not know Alexa Merred was present until he was informed by Quincy High School staff.  He advised Quincy High School staff that the court's orders did not prevent him from being in the high school gymnasium with Alexa Merred.

20.     Mehdi Merred called 911 and falsely informed the Quincy Police Department that Dr. Cornu-Labat was violating a restraining order.  Mehdi Merred falsely stated that the restraining order prevented Dr. Cornu-Labat from being within 250 feet of Alexa Merred.

21.     At approximately 8:50 p.m., Officers Bakke and Clark approached Dr. Cornu-Labat in the gymnasium and placed him under arrest. Officers Bakke and Clark were in uniform and on duty at the time.

22.     Prior to arresting Dr. Cornu-Labat, Officers Clark and Bakke obtained a copy of the Court's Orders via facsimile.  Officers Clark and Bakke reviewed the

1    Court's Orders, and knew or should have known that the Court's Orders did not

2    prohibit Dr. Cornu-Labat from being within 250 feet of Alexa Merred.

3          23.    Officer Clark told Dr. Cornu-Labat that he was being arrested for a

4    violation of the terms of the Court's Orders because Dr. Cornu-Labat was in the

5    gymnasium with Alexa Merred.

6          24.    On information and belief, the Quincy Police Department had a police

7    supervisor on duty, who was aware of the dispatch and arrest.  That supervisor

8    failed to confirm the terms of the Court's Orders, or supervise Bakke and Clark's

9    conduct at the gymnasium.

10          25.    The arrest attracted public attention in the gymnasium.  Numerous

11    persons, including Dr. Cornu-Labat's family, friends, and potential patients,

12    observed the arrest.

13          26.    Officers Bakke and Clark searched Dr. Cornu-Labat, handcuffed him,

14    and transported him to the Quincy Police Department.  Dr. Cornu-Labat repeatedly

15    advised Officers Bakke and Clark that he had not violated the Court's Orders.

16          27.    Dr. Cornu-Labat was detained in a cell at the Quincy Police

17    Department for approximately one hour.

18          28.    On December 5, 2010, Dr. Cornu-Labat visited the Quincy Police

19    Department with Quincy City Councilmember Jose Saldana.  Dr. Cornu-Labat

20    presented a copy of the Court's Orders to Officer Clark.  Officer Clark became

21    hostile, and told Dr. Cornu-Labat that Dr. Cornu-Labat was arrested "because you

22    were approached by two school officials that notified you of Alexa being present at

23    the game and that you had to leave. You willfully violated the terms of the

24    restraining order by not leaving immediately."

25          29.    Dr. Cornu-Labat showed Officer Clark a copy of the Court's Orders,

26    and Officer Clark responded that "[i]f you check the original order it contains a

27    paragraph about the schools."  None of the Court's Orders contain any mention of

28    schools.

COMPLAINT - 5

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

30.     On December 8, 2010, the Grant County District Court dismissed the Orders of Protection addressing the Merred children and Randy Zolman.

31.     On December 13, 2010, Dr. Cornu-Labat received a notice of arraignment in Case. No. Q8153C, charging Dr. Cornu-Labat with Violation of a Civil Antiharassment Order.  The criminal charge is a public record, and further damages Dr. Cornu-Labat's reputation in the community and causes substantial additional emotional distress.

32.     Dr. Cornu-Labat is a general surgeon, who may build a practice in Quincy.  He is a well-known figure in Quincy.  His public arrest and criminal charge has attracted significant public attention, and caused substantial emotional distress and embarrassment to both Dr. Cornu-Labat and his family.  His ability to build a practice in Quincy is damaged by his unlawful public arrest and criminal charge.

33.     Dr. Cornu-Labat has been seeking short-term *locums* employment as a surgeon.  *Locums* employment typically pays between $150-$175 per hour. He also has an open offer of full-time employment from a hospital in Tillamook, Oregon. Dr. Cornu-Labat has had to disclose and will have to disclose his arrest and charge, and his ability to obtain both short and long-term work with other employers is damaged by his arrest and charge.

34.     Dr. Cornu-Labat has suffered substantial emotional and economic damages as a result of his public arrest in a high school gymnasium while his son played basketball and subsequent criminal charge.

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

## V.    FIRST CLAIM: VIOLATION OF 42 U.S.C. §§ 1983 AND 1985 (DEFENDANTS BAKKE, CLARK, AND THE CITY OF QUINCY ONLY)

35.    Plaintiff realleges and incorporates by this reference allegations set forth in Paragraphs 1 through 34 above.

36.    Defendants acted under color of law.

37.    Defendants Bakke and Clark, together with unknown members of the Quincy Police Department and City of Quincy, conspired to deprive Plaintiff of rights secured under the Constitution of the United States, as alleged above, including the right to be free from unlawful searches and seizures protected by the 4th Amendment to the Constitution.

38.    Defendants deprived Plaintiff of rights secured under the Constitution of the United States, as alleged above, including the right to unlawful searches and seizures protected by the 4th Amendment to the Constitution.

39.    The City of Quincy had a duty to train Officers Bakke and Clark, and failed to adequately train Officers Bakke and Clark. The City of Quincy further knew of the actions of Officers Bakke and Clark, and failed to adequately supervise Officers Bakke and Clark in the performance of their duties.

40.    The City of Quincy's failure to adequately train and supervise its officers reflects a deliberate and conscious choice on the part of the City, and is an official policy, regulation, custom, or usage.   The City of Quincy's official policies, regulations, customs, or usages are responsible for the deprivation of plaintiff's rights protected by the Constitution.

41.    Plaintiff was damaged.

## VI.   SECOND CLAIM: FALSE ARREST AND FALSE IMPRISONMENT (DEFENDANTS BAKKE, CLARK, AND THE CITY OF QUINCY ONLY)

42.    Plaintiff realleges and incorporates by this reference allegations set forth in Paragraphs 1 through 34 above.

43.    Defendants arrested and imprisoned Plaintiff by force or threat of

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  force.

2  44.    The arrest and imprisonment were without legal basis.

3  45.    Plaintiff was damaged.

### VII.   THIRD CLAIM: OUTRAGE
### (ALL DEFENDANTS)

6  46.    Plaintiff realleges and incorporates by this reference allegations set

7  forth in Paragraphs 1 through 34 above.

8  47.    Defendants engaged in extreme and outrageous conduct.

9  48.    Defendants intentionally or recklessly inflicted emotional distress.

10  49.    Plaintiff suffered severe emotional distress and damages.

### VIII.  FOURTH CLAIM: DEFAMATION
### (ALL DEFENDANTS)

13  50.    Plaintiff realleges and incorporates by this reference allegations set

14  forth in Paragraphs 1 through 34 above.

15  51.    Defendants made a false statement or statements about Plaintiff.

16  52.    Defendants' statement or statements were unprivileged.

17  53.    Defendants were at fault for making the statements.

18  54.    Plaintiff was damaged.

### IX.   FIFTH CLAIM: FALSE LIGHT
### (ALL DEFENDANTS)

21  55.    Plaintiff realleges and incorporates by this reference allegations set

22  forth in Paragraphs 1 through 34 above.

23  56.    Defendants publicized a matter that placed Plaintiff in a false light.

24  57.    The publication would be highly offensive to a reasonable person.

25  58.    Defendants knew or recklessly disregarded the falsity of the

26  publication and the false light in which Dr. Cornu-Labat would be placed.

27  59.    Plaintiff was damaged.

28

COMPLAINT - 8

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

## X.   SIXTH CLAIM: MALICIOUS PROSECUTION
### (DEFENDANTS BAKKE, CLARK, AND THE CITY OF QUINCY ONLY)

60.   Plaintiff realleges and incorporates by this reference allegations set forth in Paragraphs 1 through 34 above.

61.   Defendants instituted or continued a prosecution against Plaintiff.

62.   There was want of probable cause for the prosecution.

63.   The proceedings were instituted or continued through malice.

64.   The proceedings will terminate on the merits in favor of Plaintiff or will be abandoned.

65.   The Plaintiff suffered damage.

## XI.   SEVENTH CLAIM: NEGLIGENCE
### (DEFENDANTS BAKKE, CLARK, AND THE CITY OF QUINCY ONLY)

66.   Plaintiff realleges and incorporates by this reference allegations set forth in Paragraphs 1 through 34 above.

67.   Defendants had a duty to investigate an allegation of criminal behavior before effecting an arrest.

68.   Defendants breached that duty.

69.   Plaintiff was injured.

70.   The Defendants' breach is the proximate cause of Plaintiff's injuries.

## XII.   PRAYERS FOR RELIEF

Having stated his complaint and claims, Plaintiff requests the following relief:

1.   A trial by jury;

2.   An award of Plaintiff's damages, including but not limited to damages for loss of reputation and harm to career, emotional distress damages, punitive damages, and general damages;

3.   Injunctive relief requiring Defendants to expunge their records of Plaintiff's arrest;

COMPLAINT - 9

**NEWMAN & NEWMAN,**
**ATTORNEYS AT LAW, LLP**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1    4.    An award of Plaintiff's costs, including reasonable attorneys' fees,

2  pursuant to 42 U.S.C. § 1988, and any other applicable court rule, statute, or

3  recognized ground in equity; and,

4    5.    Such further relief as the court deems just and equitable.

5

6    Dated this 25th day of February, 2011.

7

8                            Respectfully submitted,

9

10                           Respectfully Submitted,
                             NEWMAN & NEWMAN,
11                           ATTORNEYS AT LAW, LLP

12

13

14   By:    _____
15          Keith Scully, WSBA No. 28677
            Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 10

NEWMAN & NEWMAN,
ATTORNEYS AT LAW, LLP

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800