UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GASTON CORNU-LABAT,

              Plaintiff,

        v.

MEHDI MERRED, an individual, and
ERIC BAKKE and THOMAS CLARK,
individually and in their
official capacities as police
officers, and the CITY OF
QUINCY, WASHINGTON, a Washington
Municipal Corporation and
political subdivision of the
State of Washington,

              Defendants.

NO. CV-11-0080-EFS

**ORDER GRANTING IN PART AND
HOLDING IN ABEYANCE IN PART
DEFENDANT MERRED'S MOTION
FOR SUMMARY JUDGMENT**

A hearing occurred in the above-captioned matter on March 27, 2012, in Richland. Plaintiff Dr. Gaston Cornu-Labat appeared and was represented by Keith Scully. Paul Kube appeared on behalf of Defendant Mehdi Merred; Patrick Moberg appeared on behalf of Defendants City of Quincy and Officers Eric Bakke and Thomas Clark. Before the Court was Mr. Merred's Motion for Summary Judgment, ECF No. 23, which seeks summary judgment on Dr. Cornu-Labat's claims for outrage, defamation, and false light because Mr. Merred's statements to the police and Quincy High School staff are protected from liability under RCW 4.24.510. Dr. Cornu-Labat opposes the motion, contending that RCW 4.24.510 immunity does not apply because Mr. Merred's statements were knowingly false; Dr. Cornu-

ORDER ~ 1

Labat also seeks a continuance under Federal Rule of Civil Procedure 56(d) to obtain additional information regarding Mr. Merred's knowledge. After reviewing the record and legal authority, the Court is fully informed.   For the reasons given below, the Court grants in part and holds in abeyance in part Mr. Merred's motion.

**A.   Background**[1]

Dr. Cornu-Labat is a surgeon.   In February 2007, he was hired by Quincy Valley Medical Center (QVMC) Administrator Mr. Merred to serve as QVMC's chief of medical staff. Cornu-Labat Decl., ECF No. 35 ¶ 2; Merred Decl., ECF No. 27 ¶¶ 2 & 3.   During his employment, Dr. Cornu-Labat was asked by Mr. Merred to prepare a report on QVMC's operations with the goal being to move toward an integrated-health model.   Cornu-Labat Decl., ECF No. 35 ¶ 2.

While investigating QVMC's operations and preparing the report, Dr. Cornu-Labat encountered administrative bullying by long-employed middle-managers.   *Id.* ¶ 3.   Because of management's abusive behavior, Dr. Cornu-

---

[1]   When considering this motion and drafting this background section, the Court 1) took as true all undisputed facts; 2) viewed all evidence and drew all justifiable inferences therefrom in Plaintiff's favor; 3) did not weigh the evidence or assess credibility; and 4) did not accept assertions that were flatly contradicted by the record.   *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).   Agreed facts, ECF No. 42, are not supported by a citation to the record, while disputed facts and quotations are supported by a citation.

Labat discovered that employees were afraid to report problems and suggest improvements. *Id.* Dr. Cornu-Labat also discovered QVMC had several fire code violations. *Id.* ¶ 4.

Dr. Cornu-Labat approached Mr. Merred with his findings. *Id.* ¶ 7. Not receiving any action by Mr. Merred, Dr. Cornu-Labat became concerned that Mr. Merred was not truly interested in changing the working environment at QVMC. Dr. Cornu-Labat then shifted his focus for change from mid-level management practices to Mr. Merred's management practices. *Id.*

Dr. Cornu-Labat communicated his concerns to QVMC commissioners, met regularly with staff, sent letters to tlocal newspapers, and criticized Mr. Merred and QVMC on the Internet. *Id.* ¶ 8. Dr. Cornu-Labat's criticisms were solely directed at Mr. Merred's inability to effectively lead QVMC and unwillingness to change the management practices at QVMC. *Id.*

Eventually, Mr. Merred suspended and then terminated Dr. Cornu-Labat's employment at QVMC, effective January 27, 2010. *Id.* ¶ 11; Merred Decl., ECF No. 27 ¶ 4. Dr. Cornu-Labat continued notifying the public about his concerns relating to Mr. Merred's management and operations at QVMC. Cornu-Labat Decl., ECF No. 35 ¶ 12.

Purportedly concerned about Dr. Cornu-Labat's mental health and harassing conduct, Mr. Merred applied for a temporary restraining order (TRO) from the Grant County District Court. Merred Decl., ECF No. 27 ¶ 6. On November 3, 2010, the Grant County District Court issued a TRO prohibiting Dr. Cornu-Labat from surveilling Mr. Merred or his minor children, contacting Mr. Merred or his minor children, or coming within

250 feet of Mr. Merred's residence and place of employment.  ECF No. 29 Ex. A.  The TRO was extended on November 10, 2010.  *Id.* Ex. B.

On December 4, 2010, Dr. Cornu-Labat attended a Quincy High School basketball game to watch his son play basketball.  Also attending the game was Mr. Merred's high-school-aged daughter.  Mr. Merred did not attend the game, but he sent a copy of the TRO with his daughter, believing that Dr. Cornu-Labat may be there to watch his son play.

During the game, Mr. Merred's wife called her daughter and inquired whether Dr. Cornu-Labat was present; her daughter advised that he was. ECF No. 30.  Mr. Merred then got on the phone and asked his daughter to give the phone to a school employee; she did so, and Mr. Merred informed the school employee that there was a TRO prohibiting Dr. Cornu-Labat from being within 250 feet of Mr. Merred's daughter.  Merred Decl., ECF No. 27 ¶¶ 11 & 12.  The school official had another individual approach Dr. Cornu-Labat and inform him of the telephone call but Dr. Cornu-Labat was not asked to leave.  ECF Nos. 31 & 32.  The school official told Mr. Merred that the school would not take any further action.  ECF No. 31.

Mr. Merred then called 911 and advised that the "court order is 250 feet and he's closer than that" and "we have a restraining order.  I need that to be enforced immediately."  Scully Decl., ECF No. 36 Ex. A. Thereafter, Officers Bakke and Clark arrived at the gymnasium and obtained a copy of the TRO from Mr. Merred's daughter.  The officers escorted Dr. Cornu-Labat from the gymnasium, handcuffed him, and transported him to the Quincy Police Department in a patrol vehicle.  Dr. Cornu-Labat was charged with violating the TRO; this charge was later dismissed after review by the City's attorney because the TRO did not

prohibit Dr. Cornu-Labat's instant conduct.  The TRO, ECF No. 36 Ex. C, remained in effect until its termination on December 8, 2011.

On February 25, 2011, Dr. Cornu-Labat filed this lawsuit, alleging claims against Mr. Merred, Officers Bakke and Clarke, and the Quincy Police Department.  ECF No. 1.  As to Mr. Merred, Dr. Cornu-Labat asserts claims of outrage, defamation, and false light.  *Id.*  On January 18, 2012, Mr. Merred filed the instant summary-judgment motion, seeking immunity under RCW 4.24.510.  ECF No. 23.

**B.   Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Celotex Corp.,* 477 U.S. at 322.

**C.   Authority and Analysis**

The immunity statute at issue, RCW 4.24.510, which is commonly referred to as the "Anti-SLAPP"[2] statute, states:

---

[2]   "SLAPP is an acronym for strategic lawsuit against public participation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 n.1 (9th Cir. 2009) (internal quotation omitted).

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

RCW 4.24.510. Although good faith is not a listed statutory requirement, Dr. Cornu-Labat argues that a good-faith requirement is read into RCW 4.24.510 and therefore Mr. Merred is not protected from liability for his false reports to school officials and law enforcement. To support this argument, Dr. Cornu-Labat relies on case law analyzing the *Noerr-Pennington* doctrine.

The federal *Noerr-Pennington* doctrine recognizes that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Kearny*, 590 F.3d at 643-44 (internal quotation omitted); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657, 669 (1965). Even though *Noerr* and *Pennington* were antitrust cases, courts have extended their immunity principle to any *good-faith* petition for federal government redress. *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009). Therefore, the petitioner's good faith is a requirement for immunity under the *Noerr-Pennington* doctrine. *USS-POSCO Indus. v. Contra Costa Cnty. Bldg & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810 (9th Cir. 1994) (noting that immunity is lost if the party's petition was a sham).

ORDER ~ 6

The *Noerr-Pennington* doctrine, however, is based on common law.  It is not statutory.  Here, the Court must focus on the language of RCW 4.24.510.  *See Stone v. Chelan Cnty. Sheriff's Dep't*, 110 Wn.2d 806, 810 (1988) (statutory interpretation).  Although imposing a good-faith requirement would still serve RCW 4.24.510's purpose of encouraging citizens to report potential wrongdoing to federal, state, and local agencies in order to ensure effective law enforcement and the efficient operation of the government, *see* RCW 4.24.500[3] (purpose), the Washington legislature's amendments to RCW 4.24.510 make clear that Washington does not impose a good-faith requirement.

A former version of RCW 4.24.510 contained a good-faith requirement, *see* former RCW 4.24.510 (1990) ("A person who in good faith communicates a complaint or information . . . .").  The purpose of the 2002 amendments was to extend immunity to any individual, regardless of motive, who makes a communication to the government so long as the statement is "designed to have some effect on government decision making."  Laws of 2002, ch. 232, § 1.  Accordingly, Mr. Merred's motives for making his statements pertaining to the TRO are immaterial for purposes of determining whether immunity applies under RCW 4.24.510.

---

[3]   The purpose section, RCW 4.24.500, does reference good-faith. The Washington Court of Appeals in *Bailey v. Washington*, however, concluded that RCW 4.24.510 is the more specific statutory provision and therefore its lack of a good-faith requirement trumps the good-faith reference in RCW 4.24.500.  147 Wn. App 251, 263 (2008).

ORDER ~ 7

The Court turns to RCW 4.24.510's requirements: the statement 1) was reported to a "branch or agency of federal, state, or local government," and 2) regarded "any matter reasonably of concern to that agency or organization." RCW 4.24.510. As to the initial requirement, Mr. Merred first reported the information about the TRO to school officials[4] and then later reported the same information to the police department. Both the school and the police department are government agencies. Accordingly, this statutory requirement is satisfied.

The next question is whether the incorrect information Mr. Merred relayed about the TRO was a matter reasonably of concern to those respective agencies. Dr. Cornu-Labat emphasizes that a false report can never be a matter reasonably of concern to law enforcement because a false report causes misuse of government resources. Although it is undisputed that Dr. Cornu-Labat's conduct of simply watching his son's basketball game and not interacting, or attempting to interact, with Mr. Merred's daughter did not violate the TRO, the Court finds that information about a TRO involving two parties present at a school function, even if false, is information reasonably of concern to both agencies. First, the school has an interest in ensuring that its students feel safe. Second, law enforcement unquestionably has an interest in determining whether a TRO must be enforced; and here the police officers obtained a copy of the TRO from Ms. Merred's daugther.

_____

[4]    Mr. Merred argues the Complaint did not identify that its outrage, defamation, and false light claims are based on Mr. Merred's statements to school officials.  The Court disagrees.

ORDER ~ 8

Finally, Mr. Merred's incorrect information about the TRO's applicability to Dr. Cornu-Labat's conduct and the police officers' erroneous interpretation of the TRO does not vitiate the Court's finding that this was a matter reasonably of concern to these respective agencies. Accordingly, RCW 4.24.510 applies. The Court grants Mr. Merred immunity under RCW 4.24.510 as to Dr. Cornu-Labat's outrage, defamation, and false light claims.

Mr. Merred also seeks an award of costs and reasonable attorneys fees under RCW 4.24.510. Understanding that the good-faith requirement applies to a request for the additional statutory damages of $10,000.00 dollars under RCW 4.24.510, Mr. Merred does not seek this additional statutory damages award. However, the Court reads the good-faith requirement as applying to both RCW 4.24.510's attorney fees award and $10,000.00 damages award. Attorney fees are only available in Washington if authorized by statute, contract, or a recognized ground of equity, such as bad faith. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798 (1976). Here, Mr. Merred is not relying on a contract or recognized ground of equity, but rather is relying on a statute to obtain reimbursement for his reasonable attorney fees and costs. Therefore, attorney fees under RCW 4.24.510 is a *statutory* damages award. Accordingly, RCW 4.24.510's language that "[s]tatutory damages may be denied if the court finds that the complaint or information was communicated in bad faith," applies equally to the statutory attorney fees award. Therefore, Mr. Merred's good faith, including his knowledge and intent relating to the scope of the TRO and the purpose of his statements to the government agencies, is

ORDER ~ 9

relevant to whether the Court can award attorney fees to him under RCW 4.24.510.

With the benefit of this statutory interpretation, Mr. Merred is to advise the Court no later than April 3, 2012, as to whether he desires to pursue his request for attorney fees.  If so, the Court will grant Dr. Cornu-Labat the opportunity to conduct limited discovery on the issue of Mr. Merred's knowledge and intent under Rule 56(d).

**D.   Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED**:

1.   Defendant Merred's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED IN PART** (immunity) **and HELD IN ABEYANCE IN PART** (attorney fees request).

2.   No later than **April 3, 2012**, Mr. Merred shall file a notice indicating whether or not he wishes to pursue his request for attorney fees.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this___27ᵗʰ_____ day of March 2012.


_____
S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2011\0080.msj.merred.lc1.wpd

ORDER ~ 10