UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GASTON CORNU-LABAT,<br><br>          Plaintiff,<br><br>     v.<br><br>MEHDI MERRED, an individual; GRANT COUNTY SHERIFF'S OFFICE, an agency of Grant County, and GRANT COUNTY, Washington municipal corporation and political subdivision of the State of Washington,<br><br>          Defendants. | NO. CV-11-0080-EFS<br><br>**ORDER GRANTING THE GRANT COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND HOLDING IN ABEYANCE IN PART DEFENDANT MERRED'S MOTION FOR STATUTORY DAMAGES AND ATTORNEYS FEES AND COSTS** |

A telephonic hearing occurred in the above-captioned matter on February 6, 2013. Before the Court were Defendants Grant County Sheriff's Office and Grant County's (collectively, "Grant County Defendants") Motion for Summary Judgment, ECF No. 112, and Defendant Mehdi Merred's Motion for Statutory Damages and Attorneys Fees and Costs, ECF No. 124. Plaintiff Dr. Gaston Cornu-Labat participated, represented by Keith Scully; Defendant Merred participated, represented by Paul Kube; and the Grant County Defendants were represented by Michael McFarland, Jr. After reviewing the record and relevant authority and hearing from counsel, the Court was fully informed. This Order supplements and memorializes the Court's oral rulings granting the Grant County

ORDER ~ 1

Defendants' summary judgment motion and granting in part and holding in abeyance in part Mr. Merred's motion.

**A.   Background[1]**

Dr. Cornu-Labat, Quincy Valley Medical Center's (QVMC) chief of medical staff, and Mr. Merred, QVMC's Chief Executive Officer, developed opposing views as to how the QVMC should be operated. Their working relationship became strained, and Mr. Merred ultimately obtained a protection order against Dr. Cornu-Labat from Grant County District Court. The issued protection order was set forth on the Grant County District Court's standard protection order form, and was completed as follows:

| | |
|---|---|
| ✓ | Respondent is RESTRAINED from making any attempts to keep under surveillance petitioner, ~~petitioner's spouse~~, and any minors named in the table on page one. |
| ✓ | Respondent is RESTRAINED from making any attempts to contact petitioner, ~~petitioner's spouse~~, and any minors named in the table on page one. |
| ✓ | Respondent is RESTRAINED from entering or being within ___250 feet___ (distance) of petitioner's ☒ residence ☒ place of employment ☐ other: _____<br><br>☐ The address is confidential ☒ Petitioner waives confidentiality of the address which is:<br>[REDACTED FOR PURPOSES OF THIS ORDER] |
| | Other: _____ |

---

[1] The Court granted summary judgment in favor of Defendants City of Quincy ("Quincy") and Quincy Police Officers Eric Bakke and Thomas Clark. ECF No. 109. That Order contains a detailed recitation of the facts, as construed in Dr. Cornu-Labat's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, this background contains only those facts pertaining to Grant County's and Mr. Merred's interactions with Mr. Cornu-Labat.

ORDER ~ 2

ECF No. 84-4. Mr. Merred's three children were listed on page one of the protection order, including his high-school-aged daughter, Alexa.[2] On November 24, 2010, the protection order was extended through December 8, 2010.

Grant County employee Theresa Sheets entered information relating to the protection order into the National Crime Information Center (NCIC) database and the Washington State Patrol's ACCESS database using Grant County's Spillman computer system. Ms. Sheets entered the exact language from the protection order into Spillman, but she also selected a pre-set "PCO" field; a PCO field cannot be altered by the person entering the data. Pursuant to the training she received from Grant County, Ms. Sheets selected the PCO field that most closely matched the language of the protection order: "THE SUBJECT IS REQUIRED TO STAY AWAY FROM THE RESIDENCE, PROPERTY, SCHOOL OR PLACE OF EMPLOYMENT OF THE PROTECTED PERSON OR OTHER FAMILY OR HOUSEHOLD MEMBER."[3] ECF No. 63-1. This PCO

---

[2] The Court utilizes Alexa's name rather than her initials because she is no longer a minor. *See* Fed. R. Civ. P. 5.2(a)(3) (requiring a minor's initials to be used in court filings).

[3] Although printouts received from NCIC contain the following disclaimer, "WARNING - THE FOLLOWING IS AN NCIC PROTECTION ORDER RECORD. DO NOT SEARCH, DETAIN, OR ARREST BASED SOLELY ON THIS RECORD. CONTACT ENTERING AGENCY TO CONFIRM STATUS AND TERMS OF PROTECTION ORDER," ECF No. 84-5, the information downloaded from Spillman does not contain such a disclaimer.

ORDER ~ 3

erroneously expanded the scope of the protection order by including "schools" of Mr. Merred and his family or household members. Although Grant County was aware that the use of these preset PCO fields may not match the scope of a protection order, Grant County understood that an officer acting on a protection order would contact the appropriate authority to obtain the protection order's exact language before acting on the protection order.

On December 4, 2010, Dr. Cornu-Labat attended his son's high school basketball game at Quincy High School. Alexa also attended the game as she was a score keeper for the Quincy High School varsity basketball teams. Although Mr. Merred knew that 1) his daughter was attending the high school basketball games, 2) Dr. Cornu-Labat was likely to attend the boys varsity basketball game to watch his son play, and 3) a protection order was in place that listed Alexa as a protected individual, neither Mr. Merred nor Mrs. Merred attended the boys varsity basketball game. Instead, Mr. Merred permitted his daughter to attend the game with a copy of the protection order and called her during the game to inquire whether Dr. Cornu-Labat was in attendance. Alexa advised her father that Dr. Cornu-Labat was there. Mr. Merred asked his daughter to give her phone to a school official; Alexa complied. Mr. Merred advised the school official, albeit erroneously, that a protection order restricted Dr. Cornu-Labat from being within 250 feet of Alexa's school.

After learning that the school officials advised Dr. Cornu-Labat of the concern about his attendance in the gymnasium and that Dr. Cornu-Labat continued to watch the game, Mr. Merred called 911. Mr. Merred advised dispatch that Dr. Cornu-Labat was in violation of the protection

ORDER ~ 4

order and that Alexa had a copy of the protection order with her.  Mr. Merred testified that he called 911 because "there was a violation of the temporary protection order.  And that . . . [the] temporary restraining order needed to be enforced, that I had some serious concerns about my daughter's safety."  ECF No. 127-1, Ex. A, at 14:19-23.

Two Quincy police officers responded.  The officers did not ask Alexa if she had a copy of the protection order, and she did not volunteer that she had a copy of the protection order with her.  Nonetheless, the officers determined there was probable cause to arrest Dr. Cornu-Labat based on the terms of the protection order listed on Spillman, which they accessed via their patrol vehicle's computer equipment.  ECF Nos. 63 ¶ 5, 64 ¶ 4, & 84-9.  The officers arrested Dr. Cornu-Labat, transported him to the Quincy Police Department, issued him a criminal citation, and then released him.

On February 25, 2011, Dr. Cornu-Labat filed this lawsuit.  ECF No. 1.  The Court has dismissed the claims against all Defendants, except Grant County.  Dr. Cornu-Labat is pursuing the following claims against Grant County: 1) 42 U.S.C. § 1983 based on a violation of his Fourth Amendment rights, 2) false arrest and false imprisonment, 3) outrage, 4) defamation, 5) false light, and 6) negligence.

Following the filing of this lawsuit, the Grant County Hospital District ("District") authorized the expenditure of district funds to defend Mr. Merred in this litigation because Mr. Merred's "involvement in the litigation would not have occurred [except for his service as the administrator for the District] and as a result the District should provide a defense and pay any judgment that may be entered against Mehdi

1  Merred in the federal litigation." ECF No. 127, Ex. D at 1. The
2  District thereby "authorize[d] the expenditure of District funds to
3  defend Mehdi Merred in the federal litigation and to pay a judgment, if
4  any, that may be entered against Mehdi Merred in the federal litigation."
5  *Id.*, Ex. D at 2.

**B.   Grant County Defendants' Summary Judgment Motion**

The Grant County Defendants ask the Court to enter summary judgment in their favor as to all of Dr. Cornu-Labat's claims: 42 U.S.C. §§ 1983 and 1985, false arrest and imprisonment, outrage, defamation, false light, and negligence. Dr. Cornu-Labat opposes the motion.

**1.   Standard**

Summary judgment is appropriate if the record establishes "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must point to specific facts establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Celotex Corp.*, 477 U.S. at 322.

///
//
/

**2.   Authority and Analysis**

   a.   <u>42 U.S.C. §§ 1983 and 1985 Claims</u>

ORDER ~ 6

The Grant County Defendants argue that Dr. Cornu-Labat is unable to establish a triable issue of fact as to whether the Grant County Defendants deprived him of his Fourth Amendment rights, or conspired with the Quincy Defendants to deprive him of such rights. Dr. Cornu-Labat contends that 1) the Grant County Defendants were an integral participant, along with the Quincy Defendants, in depriving him of his right to be free from unreasonable seizure, and 2) the Grant County Defendants' policy of directing the data entry staff to utilize the pre-set PCO field that most closely matches the protection order, even if the PCO field is not an exact match, is a policy that was deliberately indifferent to Dr. Cornu-Labat's right to be free from unreasonable seizure and was the moving force behind his unlawful arrest.

Although it is undisputed that the Grant County Defendants' policy is to have staff utilize a PCO field that may not exactly match the language of the protection order, and there could be a triable issue of fact as to whether such policy is deliberately indifferent to the arrested individual's right to be free from unreasonable seizure, the Court grants summary judgment in the Grant County Defendants' favor as to the §§ 1983 and 1985 causes of action because Dr. Cornu-Labat was lawfully arrested. As the Court previously ruled in its August 2, 2012 Order, the arresting officers had probable cause to arrest Dr. Cornu-Labat for violating the protection order's surveillance prohibition. ECF No. 109 at 12 ("[T]he facts before the Officers were sufficient to support a probable cause determination that Dr. Cornu-Labat attempted to keep Alexa under surveillance. The Officers knew that Dr. Cornu-Labat could clearly view Alexa from his location in the gymnasium and that he

ORDER ~ 7

refused to leave after learning that she was present. Accordingly, the Court finds probable cause to arrest Dr. Cornu-Labat existed under the surveillance section of the protection order."). Although Dr. Cornu-Labat did not seek reconsideration of the Court's ruling on this issue, he contends, in response to the instant Grant County Defendants' summary-judgment motion, that the Court's ruling is erroneous, citing to *Trummel v. Mitchell*, 156 Wn.2d 653, 672 (2006), and *Burchell v. Thibault*, 74 Wn. App. 517, 520 (1994).

The Court abides by its earlier probable-cause-to-arrest ruling, finding that its ruling is consistent with the "surveillance" principles set forth in the two cases relied on by Dr. Cornu-Labat. As the Washington Supreme Court recognized in *Trummel*, "'surveillance' is defined as to keep a 'close watch over one or more persons.'" 156 Wn.2d at 315 (internal quotations omitted). Although Dr. Cornu-Labat could reasonably be understood to be watching his son play basketball, the officers also had probable cause to believe, given his position in the gymnasium directly across from Alexa, that Dr. Cornu-Labat was closely watching her. In addition, the officers were aware that Dr. Cornu-Labat continued to remain in the gymnasium in his location across from Alexa after he was told by school officials that she was present. Accordingly, the Court finds no reason to depart from its earlier ruling, finding that the arresting officers had probable cause to believe that Dr. Cornu-Labat was violating the protection order's surveillance provision. *Cf. United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (permitting departure from the law of the case if the first decision was clearly

ORDER ~ 8

erroneous; the evidence, circumstances, or law had changed; or manifest injustice would otherwise result).

Because the officers' arrest of Dr. Cornu-Labat was lawful, Grant County did not deprive, or conspire to deprive, Dr. Cornu-Labat of a constitutional right, and any deliberately-indifferent policy that Grant County may have was not the moving force for an unlawful arrest. *See Carpenter v. Scott*, 463 U.S. 825, 828-29 (1983) (listing the four elements for a § 1985 civil-rights conspiracy claim); *Mabe v. San Bernardino Cnty., Dep't of Public Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (listing the elements for a § 1983 claim). Accordingly, the Court grants the Grant County Defendants' motion in this regard.

        b.    <u>False Arrest and False Imprisonment</u>

Consistent with the Court's ruling that the officers had probable cause to arrest Dr. Cornu-Labat, the Court dismisses Dr. Cornu-Labat's claims against the Grant County Defendants for false arrest and false imprisonment because probable cause is a complete defense to these claims. *See Hanson v. City of Snohomish*, 121 Wn.2d 552, 558 (1993) (recognizing that probable cause is a complete defense to claims of false arrest and false imprisonment). And the evidence before the Court is insufficient to establish a triable issue of fact as to whether Defendants acted with malice. Therefore, the Grant County Defendants are entitled to qualified immunity. The Grant County Defendants' motion is granted in this regard.

//

/

        c.    <u>Outrage</u>

ORDER ~ 9

1  The Grant County Defendants argue that Dr. Cornu-Labat's outrage
2  claim fails to survive summary judgment because he cannot identify
3  atrocious conduct by the Grant County Defendants.  The Court agrees; no
4  reasonable juror could determine that Grant County's policy of selecting
5  the pre-set PCO field that most closely matches the protection order's
6  terms exceeds "all possible bounds of decency," is "atrocious," or
7  "utterly intolerable in a civilized community."  *Grimsby v. Samson*, 85
8  Wn.2d 52, 59 (1975).  The Grant County Defendants' motion is granted in
9  this regard.

### d. Defamation and False Statement

The Grant County Defendants ask the Court to find that there is no triable issue as to Dr. Cornu-Labat's defamation or false light claims. Because Dr. Cornu-Labat has not identified a provably false statement or false publication made by the Grant County Defendants regarding Dr. Cornu-Labat that caused him injury, the Court grants the Grant County Defendants' motion in this regard.  *See Herron v. KING Broad. Co.*, 112 Wn.2d 762, 768 (1989) (identifying four elements for a defamation action); *Corey v. Pierce Cnty.*, 154 Wn. App. 752, 762 (2010) (setting forth elements for a false light claim).

### e. Negligence

Lastly, the Grant County Defendants ask the Court to find that Dr. Cornu-Labat is unable to establish a triable issue of fact as to whether the Grant County Defendants breached a duty owed to Dr. Cornu-Labat and whether that breach proximately caused Dr. Cornu-Labat harm.  The Court finds that, although the Grant County Defendants owed a duty to Dr. Cornu-Labat to enter correct information pertaining to the protection

order into the Spillman system and that Grant County breached this duty, the Court finds no triable issue of fact exists as to whether this breach proximately caused injury to Dr. Cornu-Labat.  As discussed above, the Court finds probable cause to arrest existed under the protection order's surveillance provision and therefore, even if Grant County had properly entered the protection order's terms into Spillman, Dr. Cornu-Labat would have been arrested.  The Grant County Defendants' motion is granted in this regard.

### 3. Summary

For the above-given reasons, the Court determines that Dr. Cornu-Labat fails to establish a triable issue of fact as to any of his asserted claims against the Grant County Defendants.  Accordingly, the Grant County Defendants' summary judgment motion is granted.

## C. Defendant Merred's Motion for Statutory Damages and Attorneys Fees and Costs

Given that the Court previously dismissed Dr. Cornu-Labat's claims against Mr. Merred, Mr. Merred asks the Court to award him attorneys fees and costs and $10,000 in statutory damages pursuant to RCW 4.24.510, Washington's "Anti-SLAPP"[4] statute.  Dr. Cornu-Labat opposes the motion, contending that Defendant Merred called 911 and sought law enforcement assistance in bad faith given that he misinformed law enforcement regarding the scope of the protection order.

---

[4] "SLAPP is an acronym for strategic lawsuit against public participation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 n.1 (9th Cir. 2009) (internal quotation omitted).

ORDER ~ 11

RCW 4.24.510 states:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

RCW 4.24.510. The Court previously ruled that Mr. Merred was entitled to immunity under RCW 4.24.510 because his statements were to a "branch or agency of federal, state, or local government" and regarded a "matter reasonably of concern to that agency or organization," and that Mr. Merred's motivation for making protection-order-related statements to these agencies was immaterial for purposes of determining whether he was entitled to immunity. ECF No. 44. Mr. Merred now seeks to recover attorneys fees and expenses and to be awarded the $10,000 in additional statutory damages: a matter for which Mr. Merred's good faith is at issue.

Although the protection order arguably should not have extended to Mr. Merred's children, this Court is not in a position to review the appropriateness of the scope of the protection order. Rather the Court's review is limited to determining whether Dr. Cornu-Labat has established by clear and convincing evidence that Mr. Merred's statements for which he is entitled to immunity were not made in good faith. *See Right-Price Recreation v. Connells Prairie Comm'ty Council*, 146 Wn.2d 370, 383

ORDER ~ 12

(2002). The Court finds Dr. Cornu-Labat failed to establish that Mr. Merred's statements were not made in good faith.

Notwithstanding Mr. Merred's erroneous expansion of the scope of the protection order when he talked with school officials and with dispatch, and the questionability of his purported concern for his daughter's safety given his decision not to accompany her to the basketball game, Mr. Merred's other actions do not permit the Court to find by clear and convincing evidence that he acted in bad faith: 1) he provided Alexa with a copy of the protection order to carry with her, 2) he advised dispatch that Alexa had a copy of the protection order, and 3) he called the school for assistance prior to calling 911.  Accordingly, the evidence does not establish by clear and convincing evidence that Mr. Merred acted in bad faith.  Therefore, he may recover "incurred" attorneys fees and costs, and the $10,000 statutory damages award.

The Court asked the parties to brief whether Mr. Merred satisfied the "incurred" language of RCW 4.24.510's attorneys-fee provision. After reviewing the supplemental briefing, the Court finds that Mr. Merred satisfies this requirement.  RCW 4.24.510 is a remedial statute that is to be broadly construed to serve its purpose. *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1110 (W.D. Wash. 2010).  Here, Mr. Merred retained the assistance of counsel to help defend against Dr. Cornu-Labat's lawsuit.  That the District agreed to pay for Mr. Merred's defense is immaterial.  Accordingly, the Court finds Mr. Merred is entitled to recover the expenses and reasonable attorney fees incurred to defend this lawsuit, and shall additionally receive statutory damages in the amount of $10,000.

ORDER ~ 13

Mr. Merred requests $43,814.50[5] in attorneys fees and $364.30 in costs as of November 30, 2012. He seeks leave to supplement his request with those attorneys fees incurred after November 30, 2012. Dr. Cornu-Labat has not objected to the claimed hours or attorney-fee hourly rates. However, this Court must engage in an independent lodestar assessment, which requires the Court to multiply the number of hours reasonably expended on the litigation by a reasonable local hourly rate for an attorney with the skill required to perform the litigation. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The Court must take great care in ensuring that the number of hours claimed were reasonably expended on the litigation by considering whether the hours are excessive, redundant, or otherwise unnecessary or unreasonable in light of the issues involved, and ensure that the hourly fee is reasonable given the skill and experience of counsel in light of the legal services at issue and results obtained. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986) (recognizing that the quality of counsel's representation is reflected in the reasonable hourly rate); *Morales*, 96 F.3d at 363; *Green v. Baca*, 225 F.R.D. 612, 614 (C.D. Cal. 2005) (citing *Hensley*, 461 U.S. at 433-35). There is a strong presumption that the lodestar figure represents a reasonable fee; therefore, it is only in rare and exceptional circumstances that the lodestar method does not adequately

---

[5] This sum is composed of the following amounts: $32,085.00, ECF No. 127 at 3; $9,604.00, *id.* at 4; and $2,125.50, ECF No. 132.

ORDER ~ 14

take into account a factor that may properly be considered in determining a reasonable fee and an enhancement above the lodestar calculation is appropriate. *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010).

### 1.  Attorney and Paralegal Rates

Mr. Merred seeks recovery for attorneys fees based on the following charged hourly rates: Mr. Albright, $365.00; Mr. Haney, $300.00; Mr. Zimmerman, $299.27; Mr. Kube, $278.52; Mr. Riensche, $180.00; Ms. Norton, $188.07; Ms. Dengate, $100.00 (paralegal); and Ms. Fortier, $100.00 (paralegal). In order to allow the Court to assess whether these rates are prevailing market rates for the Eastern District of Washington for similar work performed by attorneys and paralegals of comparable skill, experience, and reputation, *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979-80 (9th Cir. 2008), Mr. Merred shall supplement his motion no later than February 19, 2013, with affidavits from at least two other attorneys relating to the reasonableness of the charged rates. Plaintiff may file a response, limited to five pages, no later than February 26, 2013. No reply shall be filed.

### 2.  Incurred Hours

No later than February 20, 2013, Mr. Merred's counsel shall supplement the record with a declaration identifying the remaining incurred hours. Plaintiff may file a response, limited to five pages, no later than February 27, 2013. No reply shall be filed. The Court will then assess the reasonableness of the claimed incurred hours.

## D.  Conclusion

For the above-given reasons, **IT IS HEREBY ORDERED:**

ORDER ~ 15

1. The Grant County Defendants' Motion for Summary Judgment, **ECF No. 112**, is **GRANTED**.
2. Defendant Merred's Motion for Statutory Damages and Attorneys Fees and Costs, **ECF No. 124**, is **GRANTED IN PART AND HELD IN ABEYANCE IN PART**. The parties are to abide by the briefing schedules set forth above.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel.

**DATED** this  11th  day of February 2013.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2011\0080.msj.grantcounty.fees.lc1.wpd

ORDER ~ 16